THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ZUHAY VARGAS FELICIANO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JESUS RIVERA-SÁNCHEZ, *et al.*, <br><br> Defendants. | CIVIL NO. 11-1672 (JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

This is a civil rights action brought under 42 U.S.C. § 1983 ("section 1983") and various Commonwealth of Puerto Rico laws. (Docket No. 33 at ¶¶ 1, 44-48). Popular Democratic Party ("PDP") member Zuhay Vargas Feliciano ("Vargas"), her spouse Orlando Torres Morning ("Torres") and the conjugal partnership established between them (the "Conjugal Partnership")(collectively, "Plaintiffs"), bring suit against New Progressive Party ("NPP") members Jesús Rivera Sánchez ("Rivera"), Carlos Chardón ("Chardón"), Brenda A. Virella Crespo Burset ("Virella") and Ana Nilsa Méndez Barreto ("Méndez")(collectively, "Defendants"). Plaintiffs allege that Defendants violated Vargas' rights when Defendants fired her from her job with the Department of Education ("DOE"), neglected to inform her that she was entitled to be reinstated and failed to reinstate her to her position with the DOE because of her PDP

-1-

affiliation.   (Docket No. 33 at ¶¶ 1, 24, 30, 44).

Before the Court is Defendants' motion to dismiss, Plaintiffs' response, Defendants' reply and Plaintiffs' sur-reply.   (Docket Nos. 26, 34, 45, 48).   For the reasons discussed below, Defendants' motion is hereby **GRANTED in part and DENIED in part**.

### BACKGROUND

The facts contained in the complaint are as follows:

Vargas, a resident of Isabela, Puerto Rico, is a PDP member. (Docket No. 33, ¶¶ 2, 25).   Vargas participated in a number of PDP activities: she worked with Isbela's PDP "barrio leader" and is known as the PDP representative in last election's electoral college.   Id.

On September 3, 2008, Vargas began working as a Nutritional Service Worker in the DOE's Child Nutrition Program (the "Child Nutrition Program").   (Docket No. 33, ¶ 13).   Vargas' duties included preparing and serving meals, washing and sanitizing trays and cutlery, and cleaning the kitchen and lunch room.   (Docket No. 33, ¶ 15).   Vargas received positive feedback from her supervisor, non-party Sonia Calero Del Valle ("Calero").   (Docket No. 33, ¶ 16).   On March 18, 2009, Vargas "approved her probationary period." Id.

On May 29, 2009, Chardón sent Vargas a letter "indicating" that Vargas' appointment would not be renewed pursuant to Puerto Rico's economic austerity plan, Law No. 7 of March 9, 2009 ("Law

7"), P.R. Laws Ann. tit. 3, § 8791 *et seq.* (Docket No. 33, ¶ 18).
Calero told Vargas that she should keep her ears open when school
resumes because the Child Nutrition Program required additional
personnel. (Docket No. 33, ¶ 19). Subsequently, Law 7 was amended
such that lunchroom employees were retroactively exempted from Law
7's layoff provisions. P.R. Laws Ann. tit. 3, § 8797(d)("Law 37").
Nevertheless, according to Vargas, Defendants failed to inform her
that she had the right to be reinstated to her position because
they earmarked the vacant positions for NPP supporters. (Docket
No. 33, ¶¶ 23-24).

Vargas heard that the DOE was interviewing candidates for
positions with the Child Nutrition Program. (Docket No. 33, ¶ 29).
On August 9, 2009, Vargas arrived at the interview site and handed
her dismissal letter, personnel evaluation and completed
application to "Méndez and/or her personnel" and waited to be
interviewed. (Docket No. 33, ¶¶ 31-32). Vargas approached Méndez
and told her that she was qualified and knew about the vacancies
but still was not interviewed. (Docket No. 33, ¶ 32). Méndez
responded: "let me see, because I have not received those
instructions." (Docket No. 33, ¶ 32). Fifteen people, a majority
of which Vargas believes to be NPP members, were selected to fill
the vacancies. (Docket No. 33, ¶ 33-35). Vargas was not chosen.
(See Docket No. 33, ¶¶ 31-36). According to Plaintiffs, either
Calero or Yaritza Vargas, the Director of the Child Nutrition

Program in the area, said that "this is all politics. They knew they had to choose those that were taken out."  (Docket No. 33, ¶ 36).

On August 14, 2009, Vargas wrote Chardón and the "Challenge Committee" questioning the legality of the hirings.  (Docket No. 33, ¶ 37).  Vargas did not receive a response.  Id.  Sometime in August of 2009, additional personnel was selected for the Child Nutrition Program.[1]  (Docket No. 33, ¶ 38).  Vargas was neither notified about the job openings nor selected for a position.  Id.

## STANDARD OF LAW

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted.  To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007);  see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action."

---

[1]It is unclear whether the additional hirings were made before or after Vargas wrote Chardón and the Challenge Committee.

Ocasio-Hernández, 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "Actual proof of those facts is improbable." Id. Finally, the Court assesses whether the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." Id.

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 13.

## DISCUSSION

The Court proceeds in four parts. In the first part, the Court addresses whether Torres and the Conjugal Partnership have standing to bring suit pursuant to section 1983. Next, the Court discusses whether Puerto Rico's notice-of-claim statute and section 1983's statute of limitations bars Plaintiffs' case. In the third part, the Court analyzes whether Defendants are cloaked with Eleventh Amendment immunity. Fourth, the Court looks at whether Plaintiffs state a claim under section 1983 for violations of Vargas' rights under the First, Fifth and Fourteenth Amendments to the Constitution and, if so, whether the Defendants are entitled to qualified immunity.

-5-

CIVIL NO. 11-1672 (JAG)

## I.    Section 1983 Standing

Standing concerns whether the plaintiff is the appropriate party to bring suit.  Davis v. Fed. Election Com'n, 554 U.S. 724, 734 (2008).  "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling."  Id. at 733.  Spouses and conjugal partnerships do not have standing to bring suit under section 1983 unless the alleged unconstitutional conduct was aimed directly at them or the familial relationship.[2]  Robles-Vazquez v. Tirado Garcia, 110 F.3d 204, 206 n. 4 (1st Cir. 1997);  Cotto v. Municipality of Aibonito, No. 10-2241, 2012 WL 1110177, at *4 (D.P.R. Apr. 2, 2012)(internal citations omitted).

Plaintiffs do not plead that Defendants' alleged unconstitutional conduct was aimed at Torres, the Conjugal Partnership, or the familial relationship.  Plaintiffs aver that Defendants violated Vargas' rights when Defendants fired her, neglected to inform her that she was entitled to be reinstated and failed to reinstate her because of her PDP affiliation.  (Docket No. 33 at ¶¶ 1, 24, 30, 44).  Accordingly, Torres and the Conjugal

---

[2]Although Defendants only argue that Torres lacks standing to bring suit under section 1983, the Court considers the Conjugal Partnership's standing sua sponte.  See Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006)(internal citations omitted).

**CIVIL NO. 11-1672 (JAG)**

Partnership's action brought pursuant to section 1983 is hereby **DISMISSED WITH PREJUDICE.**

## II.  Eleventh Amendment Immunity

The Supreme Court Government officials sued in their official capacities for monetary relief are not "persons" under section 1983. <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 123 (1st Cir. 2003)(citing <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58, 71 (1989)). In contrast, government officials sued in their official capacities are not immune from suits for injunctive relief. <u>Id</u>.

Defendants are sued in their official capacities for injunctive and monetary relief.[3]  (Docket No. 33 at 13). Accordingly, Plaintiffs' action against Defendants in their official capacities for money damages are hereby **DISMISSED WITH PREJUDICE.** Plaintiffs' suit against Defendants in their official capacities for injunctive relief are not afforded Eleventh Amendment protection and hence survive.

## III. Section 1983's Statute of Limitations and Puerto Rico's Notice-of-Claim Statute

### A.    Section 1983's Statute of Limitations

---

[3]Plaintiffs also bring suit against Defendants in their personal capacities.  (Docket No. 33, ¶¶ 2-7).  Government officials sued in their personal capacities are not entitled to Eleventh Amendment Immunity.  Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687-89 (1949); Kentucky v. Graham, 473 U.S. 159, 167 (1985).

CIVIL NO. 11-1672 (JAG)

The limitations period in section 1983 suits is borrowed from state personal injury actions.  Benitez-Pons v. Commw. of P.R., 136 F.3d 54, 59 (1st Cir. 1998)(internal citations omitted).  Puerto Rico law establishes a one year limitations period for personal injury suits.  Id. (internal citations omitted).  Defendants argue that Plaintiffs' section 1983 suit is time-barred because the instant suit was commenced more than one year after Plaintiffs requested a voluntary dismissal of an analogous suit brought in state court.  (Docket No. 25, at 5-6).

The general rule under Puerto Rico law is that commencing an action tolls the statute of limitations.  Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 407 (1st Cir. 2009).  If an otherwise timely action is dismissed with prejudice, the limitations period resets running from the time of dismissal.  Id.

The complaint states that Plaintiffs filed an analogous suit against Defendants in Puerto Rico court on October 14, 2009. (Docket No. 33, ¶ 41).  The complaint also states that Plaintiffs requested a voluntary dismissal of that action on May 17, 2011. Id.  Plaintiffs commenced the instant action on July 13, 2011, less than one year after requesting a voluntary dismissal of the Puerto Rico action.[4]  (Docket No. 1).  Accordingly, the complaint is

---

[4]Plaintiffs' original complaint states that they requested the voluntary dismissal of the Puerto Rico action on May 17, 2010.  (Docket No. 1, ¶ 41).  Nevertheless, Plaintiffs submitted

CIVIL NO. 11-1672 (JAG)

timely on its face.

### B.   Puerto Rico's Notice-of-Claim Statute

Defendants argue that Plaintiffs complaint must be dismissed because Plaintiffs failed to comply with Puerto Rico's notice-of-claim statute, Law No. 104 of June 29, 1995, P.R. Laws Ann tit. 32, § 3077a ("Law 104").   (Docket No. 26 at 43-45).   Law 104 requires a plaintiff bringing suit against Puerto Rico to give notice to the Secretary of Justice within ninety days after the plaintiff becomes aware of their damages.   P.R. Laws Ann tit. 32, § 3077(c).

Defendants argument does not hold water.   State notice-of-claim statutes, such as Law 104, are inapplicable to section 1983 actions brought in federal court. See Felder v. Casey, 487 U.S. 131, 140-41 (1988).[5]   Because Plaintiffs complaint arises under section 1983, Plaintiffs were not required to comply with Law 104. Id.

## IV.   Section 1983 Liability and Qualified Immunity

To state a claim under section 1983, Vargas must plausibly plead three elements: (1) Vargas was deprived of a constitutional right; (2) "a causal connection between [Defendants' conduct] and

---

a second amended complaint, which states that Plaintiffs requested the voluntary dismissal.   (Docket No. 33, ¶ 41).

[5]In contrast, a plaintiff bringing a state law claim in federal court must comply with Law 104.   See Felder, 487 U.S. at 151.

CIVIL NO. 11-1672 (JAG)

the [constitutional] deprivation"; and (3) "state action."[6] Sánchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009)(citing 42 U.S.C. § 1983). At issue is the first and second elements: whether Defendants caused Vargas to be deprived of her constitutional rights.

**A. Constitutional Violation**

Plaintiffs argue that Defendants violated Vargas' rights under the First, Fifth and Fourteenth Amendments of the Constitution when Defendants fired her, neglected to inform her that she was entitled to be reinstated and failed to reinstate her because of her PDP affiliation. (Docket No. 33 at ¶¶ 1, 24, 30, 44). Each Amendment will be discussed in turn.

**1. First Amendment**

The First Amendment of the Constitution states that "[c]ongress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peaceably assemble . . . ."[7] U.S. Const., amend. 1. The First Amendment grants non-policy making public employees the right to be free from adverse employment actions taken as a result of their political

---

[6]Torres and the Conjugal partnership also bring suit under section 1983. Their claims were already dismissed because they lack standing.

[7]The First Amendment applies to Puerto Rico through incorporation into the Fourteenth Amendment. Ramírez v. Sánchez Ramos, 438 F.3d 92 n. 1 (1st Cir. 2006).

CIVIL NO. 11-1672 (JAG)

affiliations. Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594
(1st Cir. 2011)(internal citations omitted).

To state a claim for political discrimination, Plaintiffs must
plausibly plead: "[1] that the protagonists are members of opposing
political parties; [2] that the defendant knows of the plaintiff's
political affiliation; [3] that an adverse employment action
occurred; and [4] political affiliation was a substantial or
motivating factor behind the adverse action." Grajales v. P.R.
Ports Auth., 682 F.3d 40, 46-47 (1st Cir. 2012)(internal citations
omitted). Defendants contend that Plaintiffs insufficiently pleads
that Defendants were aware of Vargas' PDP affiliation.[8] (Docket

---

[8]Defendants also argue that Plaintiffs insufficiently pled
that Defendants' behavior was motivated by discriminatory animus.
(Docket No. 26, at 10).  Defendants reserve three sentences out
of their forty-five page memorandum of law to their position.
(Docket No. 26, at 10).  The three sentences are conclusory and
devoid of legal reasoning.  See e.g., id. ("Likewise, there is
insufficient factual matter pled in the Complaint to enable a
Court to find that plaintiff's political affiliation was a
substantial or motivating factor behind the alleged adverse
employment decision.").  A statement that a plaintiff's complaint
is conclusory is itself conclusory.  Accordingly, Defendants
waive their argument.  United States v. Zannino, 895 F.2d 1, 17
(1st cir. 1999)("issues adverted to in a perfunctory manner,
unaccompanied by some effort at developed argumentation, are
deemed waived.").
     In any event, Plaintiffs' complaint adequately pleads that
Vargas' PDP affiliation was a substantial or motivating factor
for the alleged unconstitutional conduct.  Of the fifteen people
selected for positions with the Child Nutrition program, a
majority of them were known NPP members.  (Docket No. 33, ¶ 33-
35).  Vargas, a PDP member, received positive evaluations for her
work with the Child Nutrition member, but was not chosen for a
position.  (Docket No. 33, ¶¶ 16, 31-36).  Indeed, either Calero,

-11-

**CIVIL NO. 11-1672 (JAG)**

No. 26 at 2, 8-10).  Plaintiffs decline responding.

To determine whether the complaint plausibly pleads the knowledge element the Court is not limited to allegations directly addressing Defendants knowledge.  Rather, the Court is required to evaluate "the cumulative effect" of the pleadings.  Grajales v. P.R. Ports Auth., 682 F.3d at 47.  Plaintiffs state that Vargas is a "well-known" PDP member.  (Docket No. 33, ¶ 25).  Vargas works with the PDP "barrio leader" and participated in a number of PDP activities.  Id.  The complaint states that Vargas is publicly known as the PDP representative in last election's electoral college.  Id.  Moreover, the majority of people selected to fill positions with the Child Nutrition Program were known NPP members, whereas Vargas, who was not selected, was a PDP member.  (Docket No. 33, ¶ 31-36).  Thus, it is plausible that Defendants knew that Vargas was a member of the PDP.  As the First Circuit recently stated, "nothing about the plausibility standard requires a court to blind itself to what is obvious."  Id. at 48.

Grajales is apposite.  The plaintiff in Grajales brought suit alleging that he was discriminated against because of his PDP affiliation.  Id. at 43.  The district court held that the plaintiff's complaint must be dismissed because, *inter alia*, the

---

Vargas' former supervisor or Yaritza, the Director of the Child Nutrition Program in the area told Vargas that "this is all politics."  (Docket No. 33, ¶ 36).

**CIVIL NO. 11-1672 (JAG)**

plaintiff failed to plead that the defendants were aware of the plaintiff's PDP affiliation. <u>Id</u>. at 44.  The First Circuit Court of Appeals reversed the district court.  The Circuit reasoned that the complaint plausibly stated defendants awareness when the plaintiff was appointed to a trust position at the defendants place of employment by a high ranking member of the PDP during a PDP administration. <u>Id</u>. at 47.

The allegations in the case at bar are as detailed as those found sufficient in <u>Grajales</u>.  682 F.3d 40.  Here, like in <u>Grajales</u>, Plaintiffs bring suit alleging that Defendants fired Vargas from her job, neglected to inform Vargas that she was entitled to be reinstated and failed to reinstate Vargas because of her PDP membership.  Similar to <u>Grajales</u>, Vargas held a prominent position with the PDP: she was the PDP representative in last election's electoral college.  Furthermore, the complaint states that Vargas, a PDP member, was qualified for the position but was passed over in favor of NPP members.  (Docket No. 33, ¶ 31-36).  Thus, here, like in <u>Grajales</u>, the cumulative effect of  the allegations pled in the complaint, coupled with the Courts judicial experience leads to the conclusion that Plaintiffs plausibly plead that Defendants were aware of Plaintiffs' PDP membership.

The complaint also contains additional information indicating that Chardón knew Vargas' PDP affiliation.  Plaintiffs aver that

CIVIL NO. 11-1672 (JAG)

Vargas wrote Chardón on August 14, 2009 challenging the lawfulness of Defendants actions.  According to Vargas, she told Chardón that the alleged adverse employment decisions were motivated by political considerations.  (Docket No. 33, ¶ 37).  Thus, it is plausible that Chardón knew of Vargas' political affiliation when Vargas purportedly told him that she was being discriminated against because of it.  See Cotto v. Municipality of Aibonito, No. 10-2241, 2012 WL 1110177, *7 (D.P.R. Apr. 2, 2012).

Accordingly, Plaintiffs state a First Amendment violation.

### 2.   Fifth Amendment

The due process clause of the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.  The Fifth Amendment is inapplicable to causes of action asserted against public officials in Puerto Rico.  See Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007); Natal-Rosario v. P.R. Police Dep't, 609 F.Supp.2d 194, 201 (D.P.R. 2009)(internal citations omitted).  Accordingly, Vargas' cause of action against Defendants brought under a Fifth Amendment theory is hereby **DISMISSED WITH PREJUDICE**.

### 3.   Fourteenth Amendment

The Fourteenth Amendment states that "nor shall any State deprive a person of life, liberty, or property, without due process

-14-

CIVIL NO. 11-1672 (JAG)

of law . . . ." U.S. Const. amend. XIV.  The Fourteenth Amendment
protects certain public employees from termination without being
afforded due process. Colón-Santiago v. Rosario, 438 F.3d 101, 109
(1st Cir. 2006)(internal citations omitted).  To state a Fourteenth
Amendment violation, Vargas must plausibly plead that she: (1) is
a public employee with a property interest in her continued
employment; and (2) Defendants deprived Vargas of her property
interest without due process. Maymí v. P.R. Ports Auth., 515 F.3d
20, 29 (1st Cir. 2008).  Defendants argue that Vargas did not have
a property interest in her continued employment. (Docket No. 26 at
28-30).  The Court disagrees.

Property interests are created and defined by state law.
Colón-Santiago, 438 F.3d at 108 (internal citations omitted).
Puerto Rico law grants career public employees a property right in
their continued employment. Marrero-Gutiérrez v. Molina, 491 F.3d
1, 8 (1st Cir. 2007).  Vargas does not argue that she was deprived
of a property interest when she was initially terminated as part of
Law 7.  (Docket No. 38 at 3)("Law 7 did permit the defendants to
dismiss her for economic reasons without a pre-termination hearing
. . . .").  Rather, Vargas argues that Law 7 was amended by Law 37
to exclude employees working in DOE lunchrooms, such as Vargas,
from its' layoff provisions.

Puerto Rico passed Law 7 as a three phase economic austerity

CIVIL NO. 11-1672 (JAG)

plan to help eliminate Puerto Rico's deficit.  The first phase provides for voluntary resignations and work reductions.  While the second phase calls for involuntary layoffs of certain public employees while, the third phase entails a temporary suspension of collectively bargained for contracts.  See P.R. Laws Ann. tit. 3, §§ 8794-8802.  Section 8797 of Law 7 provides that certain categories of employees, such as police officers and firefighters, are excluded from phase two's involuntary layoff provisions.  On May 29, 2009, Chardón wrote Vargas "indicating" that Vargas was terminated pursuant to Law 7.  (Docket No. 33, ¶ 18).

After Vargas was laid-off, section 8797 of Law 7 was amended by Law 37 to exclude DOE "employees working in lunchrooms attached to the Department of Education." P.R. Laws Ann. tit. 3, § 8707(d). Law 37 states that it applies retroactively to March 9, 2009. Thus, because Law 37 excludes DOE employees such as Vargas from Law 7's layoff provisions and Law 37 applies retroactively to when Law 7 was passed, Plaintiffs plausibly pled that Vargas had a property interest in her continued employment.  Because Defendants do not challenge that Plaintiffs were provided with due process prior to her termination, Plaintiffs state a Fourteenth Amendment violation.

**B.   Causation**

Defendants may be liable under section 1983 only if: "a

CIVIL NO. 11-1672 (JAG)

plaintiff can establish that his or her constitutional injury resulted from [1] the direct acts or omissions of the official, or [2] from indirect conduct that amounts to condonation or tacit authorization." Grajales, 682 F.3d at 47 (quoting Ocasio-Hernández, 640 F.3d at 16). A supervisor may not be held liable under a respondeat superior theory. Id. As such, "each defendant's role in the [challenged] decision must be sufficiently alleged to make him or her a plausible defendant." Ocasio-Hernández, 640 F.3d at 16. Plaintiffs allege that Defendants violated Vargas' rights when Defendants fired her from her job, neglected to inform her that she was entitled to be reinstated and failed to reinstate her because of her PDP affiliation. (Docket No. 33 at ¶¶ 1, 24, 30, 44). Yet, The complaint does not contain any facts linking Defendants conduct to the alleged constitutional deprivations.

Plaintiffs argue that they are able to satisfy the causation element because Defendants have the authority to make personnel decisions. (Docket No. 34, at 18). Plaintiffs' complaint does contain a number of details concerning Defendants position and duties within the DOE. (see e.g., Docket No. 33, ¶¶ 10-12). Nevertheless, it is well settled that section 1983 "liability cannot rest solely on a defendant's position of authority . . . ." Ocasio-Hernández, 640 F.3d at 16 (internal citations omitted).

-17-

CIVIL NO. 11-1672 (JAG)

Embedded in the complaint are a number of generic accusations, concerning Defendants' collective conduct. Specifically, Plaintiffs state that Defendants "[d]ismissed and then failed to reinstate Vargas as an employee at the Child Nutrition Program" and neglected to inform Vargas that she had the right to be reinstated. (Docket No. 33, ¶¶ 1, 23, 30). These statements are insufficient because the complaint does not allege facts indicating that each of the defendants played a role in dismissing, neglecting to inform and failing to reinstate. See Soto-Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011)(holding that the plaintiff's statement that the defendant "participated in or directed the constitutional violation . . ." was insufficient to survive a motion to dismiss because it "provided no facts to support either that he participated in' or 'directed' the alleged violations).

Admittedly, Plaintiffs' general statements are, in essence, factual allegations. However, threadbare and speculative allegations are insufficient to bring a complaint within the realm of plausibility. See Peñalbert-Rosa, 631 F.3d at 595 (internal citations and quotations omitted). Here, Plaintiffs averments that Defendants dismissed, neglected to inform and failed to reinstate Vargas are speculative and threadbare: the Court is left guessing as to each Defendants' participation in the alleged adverse employment actions. See id. at 595-97 ("Specific information even

-18-

CIVIL NO. 11-1672 (JAG)

if not in the form of admissible evidence, would likely be enough at this stage; pure speculation is not.").

The specific allegations contained in the complaint do not link Defendants' conduct to the alleged deprivation. The complaint avers that Chardón sent Vargas a letter stating that her appointment would not be renewed pursuant to Law 7. (Docket No. 33, ¶ 18). However, Plaintiffs concede that Vargas' initial termination was lawful. (Docket No. 38 at 3)("Law 7 did permit the defendants to dismiss her for economic reasons without a pre-termination hearing . . . ."). Vargas also pleads that Méndez received her application and told Vargas that she did not receive instructions to interview her. Yet, Méndez's statement does not indicate that she decided who to interview or select to fill the positions. To the contrary, Méndez's statement shows that the decision came from elsewhere. Finally, the complaint states that Chardón never responded to Vargas after she wrote Chardón alleging that personnel decisions were motivated by political patronage. Chardón's failure to respond does not indicate that Chardón participated in or encouraged, condoned or acquiesced to the alleged unconstitional conduct. (Docket No. 33, ¶ 37). The Court declines to bring a supervisor to task for merely receiving a

CIVIL NO. 11-1672 (JAG)

complaint alleging a constitutional deprivation.[9]  To survive a motion to dismiss, Plaintiffs must provide facts that describe the role in the alleged unconstitutional actions.  They have not.

Thus, although Plaintiffs plausibly plead that Vargas' constitutional rights were violated, they fail to plausibly plead that the named Defendants caused the deprivation.  Plaintiffs' failure typically warrants dismissal.  However, the interests of justice counsel that Plaintiffs should be permitted to conduct discovery to uncover who, if anyone, deprived Vargas' of her rights.  See Peñalbert-Rosa, 631 F.3d at 596-97.

In Peñalbert-Rosa, the plaintiff alleged that the governor and the governor's chief of staff violated the plaintiff's constitutional rights when they terminated her shortly after they took office.  Id. at 594.  There, the First Circuit Court of Appeals affirmed the lower court's dismissal of the plaintiff's complaint because although the plaintiff adequately pled that she was unlawfully fired, the complaint did not contain any facts

---

[9]In Grajales, the First Circuit indicated that allegations that a defendant deliberately ignored the plaintiff's complaints of harassment were sufficient to satisfy the causation element. Grajales, 682 F.3d at 49.  However, here, unlike in Grajales, Vargas does not allege that she was harassed.  Rather, Vargas alleges that Defendants fired her from her job, neglected to inform her of her right to be reinstated and failed to reinstate her.  The complaint does not contain allegations indicating that Chardón was involved in the alleged unlawful actions.

CIVIL NO. 11-1672 (JAG)

suggesting that the defendants actually participated in the termination decision. Id. at 594-97. The Circuit Court, however, declined to dismiss the plaintiff's suit: the plaintiff was afforded the opportunity to amend the complaint to include "John Doe" as a placeholder and conduct discovery to uncover who was responsible for firing the plaintiff. Id. The court in Peñalbert-Rosa reasoned that because the complaint adequately alleged that the plaintiff was unlawfully fired and the continued post-Twombly and Iqbal uncertainty, the interests of justice warranted the plaintiff to advance to the discovery stage. Id.

Here, Plaintiffs, like the plaintiff in Peñalbert-Rosa, allege that Defendants violated Vargas' rights when they fired her from her job, neglected to inform her of her right to be reinstated and failed to reinstate her. (Docket No. 33 at ¶¶ 1, 24, 30, 44). Similar to the complaint in Peñalbert-Rosa, Plaintiffs' sufficiently plead that Vargas' constitutional rights were violated, but insufficiently plead that the named Defendants participated in the constitutional deprivation. Moreover, although the First Circuit has issued a number of opinions clarifying the post-Twombly and Iqbal pleading standard, the law continues to evolve. Thus, here, like in Peñalbert-Rosa, there is no reason to throw the baby out with the bath water: the interests of justice counsel granting Plaintiffs the opportunity to conduct discovery to

CIVIL NO. 11-1672 (JAG)

uncover who participated in the termination decision.

Accordingly, Plaintiffs' section 1983 action predicated on a First and Fourteenth Amendment violation brought against Defendants is hereby **DISMISSED WITHOUT PREJUDICE**.[10]  Plaintiffs section 1983 action brought under a First and Fourteenth Amendment theory may proceed against John and Jane Doe.[11]

### C.    Qualified Immunity

An official is entitled to qualified immunity if: (1) the plaintiff sufficiently pleads that the official violated a constitutional right; and (2) the constitutional right in question was not "clearly established" at the time of the alleged constitutional violation. Maldonado v. Fontanes, 568 F.3d 262 (1st Cir. 2009)(internal citations omitted). Defendants are not entitled to qualified immunity because Plaintiffs fail to state a claim

---

[10]In Peñalbert-Rosa, the First Circuit affirmed the district court's decision to dismiss the plaintiff's complaint.  It is unclear whether the district court dismissed the complaint with or without prejudice.  Penalbert-Rosa v. Fortuno-Burset, 692 F. Supp. 2d 206, 212 (D.P.R. 2010)("Accordingly, defendants' Motion to Dismiss (docket entry 24) is GRANTED and this action is DISMISSED.").  The Court deems it prudent to dismiss the complaint without prejudice to afford Vargas the opportunity to proceed against Defendants in the event that discovery reveals that Defendants were involved in the termination decision.

[11]The court in Peñalbert-Rosa granted the plaintiffs the opportunity to amend her complaint to seek relief against a "John Doe" as a placeholder. Id. at 597. Here, Plaintiffs do not need to amend their complaint because the complaint already lists "John and Jane Doe" as defendants.  (Docket No. 33, ¶ 7).

CIVIL NO. 11-1672 (JAG)

against the Defendants under section 1983.

**V.   Puerto Rico Law**

The Court maintains supplemental jurisdiction over Plaintiffs' state law claim because Plaintiffs' section 1983 claim against John and Jane Doe subsist.  <u>See</u> 28 U.S.C. § 1367. Accordingly, Defendants' motion to dismiss Plaintiffs' Puerto Rico claims is **DENIED**.

<b>CONCLUSION</b>

For the reasons stated above, Defendants' motion to dismiss (Docket No. 26) is hereby **GRANTED IN PART and DENIED IN PART** as follows:

A.   Torres and the Conjugal Partnerships action brought pursuant to section 1983 is hereby **DISMISSED WITH PREJUDICE** for lack of standing.

B.   Plaintiffs' section 1983 action against Defendants in their official capacities for money damages are hereby **DISMISSED WITH PREJUDICE.**

C.   Vargas' cause of action against Defendants brought under a Fifth Amendment theory is hereby **DISMISSED WITH PREJUDICE.**

D.   Plaintiffs' section 1983 action predicated on a First and Fourteenth Amendment violation brought against Defendants is hereby **DISMISSED WITHOUT PREJUDICE.**

-23-

**CIVIL NO. 11-1672 (JAG)**

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of September, 2012.

<u>S/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge

-24-